UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DIANA PAVLACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 3:96-CV-810RM |
| | ) |
| DWYER INSTRUMENTS, INC., | ) |
| | ) |
| Defendant | ) |

## MEMORANDUM AND ORDER

Plaintiff Diana Pavlack alleges that her former employer, defendant Dwyer Instruments, violated the Americans With Disabilities Act by failing to accommodate her disability and then terminating her employment because she is disabled, and also violated Title VII of the Civil Rights Act by denying her requests for temporary upgrades in positions, refusing her request to take a vacation day, and requiring her to operate the degreaser machine, all because of her sex. Dwyer has moved for summary judgment on all of Ms. Pavlack's claims. For reasons detailed below, the court grants the motion.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." "Where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be no 'genuine issue of material fact,' since a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. . . .

In considering whether there are any genuine issues of material fact, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Where a fact is disputed, the nonmoving party must show that the disputed fact is material under the applicable law. The applicable law will dictate which facts are material. Only disputes that could affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

National Soffit & Escutcheons, Inc. v. Superior Sys., Inc., 98 F.3d 262, 264-265 (7th Cir. 1996) (citations omitted).

2

## I. Background[1]

Dwyer Instruments manufacturers a broad range of measuring and control instruments for pressure, temperature, level and flow applications. Its Michigan City, Indiana headquarters is comprised of a non-union manufacturing plant, a sales office, and a warehouse operation. Ms. Pavlack began working at the manufacturing plant in 1990 as a sub-assembler, and was upgraded in 1992 to the position of carton packer. As a result of a reduction in force, Ms. Pavlack was transferred in February 1993 to the position of machine shop attendant; in that position, she worked the 11:00 p.m. to 7:30 a.m. shift. Ms. Pavlack was "bumped" into this position because she was the least senior employee among all of the manufacturing employees and no other employee bid on this particular position. Ms. Pavlack was a machine shop attendant until her employment was terminated in January 1995.

The machine shop attendant position's essential functions include drilling holes in metal and brass component parts and operating a tapper, which is a machine that places threads in holes that previously have been drilled into parts. Another of the essential functions of the position is to clean and wash machine shop parts in a degreasing solution.

---

[1] District Rule 56.1 describes the procedure by which the parties present their version of the facts for summary judgment purposes. First, the moving party provides a statement of genuine issues, which is comprised of all material facts that the moving party contends are not in dispute. The moving party must support these facts with appropriate citations to admissible evidence. The court assumes that the facts asserted by the moving party are undisputed, except to the extent that such facts are controverted in the opposing party's statement of genuine issues. The opposing party's statement of genuine issues similarly must be supported by appropriate citation to admissible evidence. From these statements of genuine issues, the court gleans the facts that are not in controversy.

Degreasing involves placing machine parts on a rack and lowering the rack into the degreasing solution. As the parts are lowered into the solution, they are sprayed with liquid. The parts then are removed from the degreasing solution and cleaned of any oil or grime. A fog often hangs over the top of the degreasing machine during the degreasing process.

During her first week as a machine shop attendant, Ms. Pavlack began experiencing several health problems: her eyes burned, she had difficulty breathing, her stomach was upset, she developed a severe rash, and she experienced severe headaches. In April 1993, Ms. Pavlack saw Dr. Charles Hagenow, who believed that she was suffering from some sort of infection and prescribed antibiotics. Ms. Pavlack's heath problems persisted, however. After Dr. Hagenow examined Ms. Pavlack again in April 1994, he determined that she was allergic to the degreasing fluid that she used at work and that exposure to the degreasing chemicals was causing her symptoms. Dr. Hagenow told Ms. Pavlack that the degreasing fluid was burning the tissues in her sinuses and bronchial system; he warned that continued contact with the degreasing fluid would cause her death. Dr. Hagenow detailed his conclusions in a note, which concluded that Ms. Pavlack should not work with degreaser fluid because of her severe allergic reactions.

Ms. Pavlack personally delivered Dr. Hagenow's note to Dwyer's employee relations manager, Jim Graham. After conferring with plant superintendent, Joe Juhasz, Mr. Graham decided to relieve Ms. Pavlack of her degreasing duties. For the next six months, other machine shop attendants performed Ms. Pavlack's degreasing responsibilities, and Ms.

Pavlack's health problems subsided. As long as Ms. Pavlack was not exposed to the degreasing solution, she suffered no allergic reactions.

In September 1994, another machine shop attendant, Pat Dawson, complained that if Ms. Pavlack did not have to perform her degreasing duties, she was not going to degrease parts either. During a meeting the next month, Mr. Juhasz stated that all machine shop attendants, including Ms. Pavlack, would be required to perform degreasing work. Ms. Pavlack again saw Dr. Hagenow, who issued another note stating that Ms. Pavlack should not work in the degreaser area because of her allergy to the degreasing chemicals. Ms. Pavlack presented this note to Dwyer's vice president of human resources, Gregg Miller, informing him that the degreasing chemicals had made her deathly sick and that, during the six months that she had been relieved of her degreasing duties, her health had improved. Ms. Pavlack remained as a machine shop attendant, but was not required to perform degreasing responsibilities.

Mr. Miller conferred with Mr. Juhasz in an effort to determine whether Dwyer could accommodate Ms. Pavlack's allergy. They concluded that Ms. Pavlack's machine shop attendant position would be posted, thus allowing Ms. Pavlack to switch positions with any employee who applied for the position. Ms. Pavlack was told that if no employee submitted a bid for her position, she would be given 60 days' notice that she would be laid off. For a year after the termination of her employment, Ms. Pavlack would be subject to recall to

another regular full-time position. When Mr. Juhasz informed Ms. Pavlack of this proposed accommodation, she did not propose an alternative accommodation.

Although the posting of Ms. Pavlack's position was the accommodation that Ms. Pavlack was offered, Mr. Juhasz also told Ms. Pavlack that he would look into getting gloves, an apron, and a mask that would allow her to perform the degreasing work. Ms. Pavlack, however, was not aware of any protective gear that would enable her to perform degreasing work; she understood Dr. Hagenow's conclusion to be that she should not work with degreasing chemicals under any circumstances. Ms. Pavlack previously had tried to perform the degreasing work wearing rubber gloves, but found that the degreasing solution still came into contact with her skin. Dwyer determined that Ms. Pavlack would need to be outfitted with a self contained breathing apparatus such as a SCUBA outfit to perform her degreasing responsibilities. Dwyer concluded that such an accommodation was not reasonable.

Toward the end of October 1994, Ms. Pavlack's machine shop attendant position was posted for bid. Murray Edwards was the only employee to bid on the position, which he was awarded and was scheduled to begin on November 7, 1994. Before assuming the position, however, Mr. Edwards retracted his bid. Mr. Juhasz informed Ms. Pavlack that because no other employee had bid on her position, she would be laid off. He suggested that she inquire whether there were any openings at the company's LaPorte, Indiana facility, unless it was too far for her to drive. Ms. Pavlack suggested alternative accommodations, such as relieving

6

her of her degreasing responsibilities or transferring her to a position in the office or the shipping department. When Ms. Pavlack asked whether there were any other jobs for her to do, Mr. Juhasz laughed; he told Ms. Pavlack that there may be a job for her in shipping, but that she should not "count on it." By letter dated December 27, 1994, Ms. Pavlack was informed that she would be on lay-off status effective January 3, 1995 due to her inability to perform the essential function of the machine shop attendant position.

Ms. Pavlack brings this action against Dwyer Products, alleging that Dwyer violated the Americans with Disabilities Act ("ADA") by failing to accommodate her disability and by terminating her employment because of her disability. Ms. Pavlack also alleges that Dwyer violated Title VII by denying her certain benefits of employment that were provided to similarly situated male employees; the facts surrounding these claims are discussed below. The court first turns to Dwyer's summary judgment motion as it relates to Ms. Pavlack's ADA claim.

## II. ANALYSIS

Ms. Pavlack claims that she was discharged because of her disability, which is actionable under the ADA. 42 U.S.C. § 12112(a). A former employee who asserts a claim of discrimination may prove her case using direct or indirect evidence. DeLuca v. Winer Indus., Inc., 53 F.3d 793 (7th Cir. 1995). Because Ms. Pavlack has produced no direct evidence of Dwyer's discriminatory intent, she must rely on indirect evidence, utilizing the

7

familiar burden shifting analysis made famous by McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) and applied in numerous cases since. This approach requires Ms. Pavlack to prove that she is a member of a protected class, her work performance met the employer's legitimate job expectations, and her employment was terminated. Id. The ADA makes "qualified individuals with a disability" a protected class, and defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. 12102(2)(A). Dwyer asserts that Ms. Pavlack cannot establish a prima facie case because she is not disabled as the act defines the term.

Interpretive regulations issued by the Equal Employment Opportunity Commission define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1997). "Substantially limits" means that the person either cannot perform a major life function or is "significantly restricted as to the condition, manner or duration" under which the individual can perform a particular major life function, as compared to the average person in the general population. 29 C.F.R. § 1630.2(j) (1997); Homeyer v. Stanley Tulchin Assoc., Inc., 91 F.3d 959, 961 (7th Cir. 1996). When determining whether an impairment is substantially limiting, the court considers "(1) the nature and severity of the impairment; (2) the expected duration of the impairment ; and (3) the permanent or long term impact of, or resulting from, the impairment." Hamm v. Runyon, 51 F.3d 721, 725 (7th Cir. 1995).

Ms. Pavlack claims that she is substantially limited in the major life activities of working and breathing. The EEOC has explained that an individual is substantially limited in working if the individual is "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job, however, does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1997).

Ms. Pavlack asserts that she suffers from chronic pulmonary disease, but she provides no evidentiary support for this assertion. Setting aside this apparently decisive evidentiary problem, and assuming that Ms. Pavlack suffers from such a condition, she has offered no argument as to how this condition substantially limits her ability to work within the meaning of the ADA. The summary judgment record reveals that Ms. Pavlack is limited from performing one particular task—degreasing. She offers no evidence that the degreasing function is common to a class of jobs, which could tend to show that she is disabled from a class of jobs. *See, e.g.*, Cochrum v. Old Ben Coal Co., 102 F.3d 908, 911 (7th Cir. 1996) (employee who could do no overhead work, heavy lifting, pushing, or pulling was prohibited from performing a broad range of duties, thus creating an issue of fact as to whether the impairment substantially limited his ability to work). At best, she has demonstrated that she cannot perform one job, that of a machine shop attendant, but "exclusion from one position of employment does not constitute a substantial limitation of a 'major life activity.'" Weiler

9

v. Household Fin. Corp., 101 F.3d 519, 525 (7th Cir. 1996) (citations omitted). In short, the record as a whole indicates that Ms. Pavlack has an impairment, but that she is not substantially limited in her ability to work.

Ms. Pavlack also claims that she is substantially limited in the major life activity of breathing. Breathing is a major life activity, so Ms. Pavlack need only show that her impairment significantly restricts her ability to breathe. The summary judgment record reveals that Ms. Pavlack had difficulty breathing anytime she came into contact with the degreasing solution, but that her condition improved once she was relieved of her degreasing responsibilities. No evidence suggests that she had difficulty breathing at any time other than when she was in contact with the degreasing solution. In other words, her impairment affected her breathing for limited periods of time. Thus, while Ms. Pavlack has demonstrated that her ability to breathe is restricted under particular circumstances, she has not demonstrated that her impairment significantly restricts her ability to breathe in general. Further, she offers no evidence suggesting the degree to which her impairment affects her ability to breathe as compared to the average person in the general population. In short, Ms. Pavlack has not carried her burden of demonstrating that her impairment makes her substantially limited in the major life activity of breathing and that she is therefore disabled under the ADA.

Because no reasonable fact-finder could find that she is disabled as defined by the ADA, Ms. Pavlack cannot make out a prima facie case of disability discrimination and

Dwyer is entitled to judgment on Ms. Pavlack's claim that her employment was terminated in violation of the ADA. Ms. Pavlack's claim that Dwyer failed to offer her a reasonable accommodation must fail as well: because Ms. Pavlack could not be found to be disabled, Dwyer cannot be found to have had a duty to offer her a reasonable accommodation. *See* Weiler v. Household Fin. Corp., 101 F.3d at 524 ("As is the case with any ADA plaintiff, Weiler must suffer from a 'disability' as defined in the Act to invoke the Act's protection."). Accordingly, summary judgment in Dwyer's favor is appropriate on Ms. Pavlack's failure to accommodate claim.

Ms. Pavlack also asserts a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that Dwyer discriminated against her on the basis of her sex. She contends that she was denied temporary upgrades to the machine operator position, that she was disallowed one vacation day, and that she was required to perform degreasing work even though a male colleague was relieved of this responsibility. Ms. Pavlack has offered no direct evidence that any of the employment decisions in question were motivated by sex-based discrimination, so she must again rely on the McDonnell Douglas framework. Under this indirect method of proof, Ms. Pavlack must demonstrate that (1) she belongs to a protected class, (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated male employees more favorably. Greenslade v. Chicago Sun-Times, Inc., 112 F.3d 853, 863 (7th Cir. 1997). An inference of discrimination arises if she satisfies this burden, and Dwyer then must articulate

11

(though it need not prove) a legitimate, non-discriminatory reason for the adverse employment action. The burden then shifts back to Ms. Pavlack to show, by a preponderance of the evidence, that the stated reason was pretextual. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

Ms. Pavlack's first claim is that Dwyer denied her temporary upgrades to a machine operator position. Dwyer does not post temporary upgrade positions, but rather relied on group leader Claude Mosley to decide which employees would be upgraded, and he awarded any available temporary upgrade to the employee with the most plant-wide seniority. Ms. Pavlack made clear throughout her employment at Dwyer that she would like a temporary upgrade to the position of machine operator, but the undisputed evidence reveals that Ms. Pavlack had the least amount of plant-wide seniority among all the employees. Although Ms. Pavlack contends in her opposition brief that a male employee, Dennis Kopta, continued to receive temporary upgrades whereas she did not, she admits in her deposition that Mr. Kopta had more plant-wide seniority than she did.[2] Accordingly, she has not come forth with evidence from it could be found that a similarly situated male was treated more favorably.

---

[2] Although Ms. Pavlack argues that she had more shop-wide seniority than Mr. Kopta, she does not dispute, through admissible evidence, that Mr. Mosley made his decision based on plant-wide seniority; nor does she contend that relying on plant-wide seniority is improper. She contends that Mr. Graham told her that decisions would be made on the basis of shop-wide seniority, but her deposition does not support this contention. Her deposition reveals that Mr. Graham told her that if line employees wanted to return to the shop, they could not "bump" her because she would then have shop seniority. Mr. Graham said nothing about shop seniority as the basis for the temporary upgrades.

Ms. Pavlack's next claim under Title VII is that her request for a vacation day was denied in April 1994 because of her sex. At 7:00 one morning, Ms. Pavlack asked Mr. Juhasz, who approved all vacation requests for plant employees, whether she could take a vacation day that would begin at the start of her next shift which began at 11:00 p.m. that evening. Ms. Pavlack needed the time off so that she could see a doctor about her condition. According to company policy, employees must request vacation time one week in advance of the scheduled vacation, but on a case-by-case basis, Mr. Juhasz would allow employees to take a vacation day with less than one week's notice. Mr. Juhasz denied Ms. Pavlack's request because she did not provide the requisite notice and because he did not consider her stated reason for needing the time off to be valid; because Ms. Pavlack's shift lasted from 11:00 p.m. until 7:30 a.m., Mr. Juhasz believed that Ms. Pavlack would not need to take time off to see a doctor.

Ms. Pavlack avers that Dwyer routinely allowed male employees to take a vacation day with limited notice. In her deposition, Ms. Pavlack identifies six other employees who were permitted to take vacation with less than one week's notice, but she provides no evidence suggesting that these other employees were similarly situated. Nothing in the summary judgment record suggests that the male employees asked on the day that they were scheduled to work to take a vacation day for that shift or that male employees offered facially suspicious reasons for needing time off. Moreover, Ms. Pavlack has offered no case law suggesting that the denial of an employee's request to take a vacation day whenever the

13

employee so desires amounts to an adverse employment action for which Title VII provides a remedy. At most, Ms. Pavlack was inconvenienced by not being able to take a vacation day when she wanted, but mere inconveniences are not actionable. Crady v. Liberty Nat. Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993).

Ms. Pavlack's last claim is that Dwyer violated Title VII by requiring her to perform degreasing work when Mr. Kopta was relieved of his degreasing responsibilities in late 1994. This claim warrants brief consideration. Evidence submitted by Dwyer, and not disputed by Ms. Pavlack, is that Mr. Kopta was not included in the two-month degreasing schedule because he was temporarily assigned to another position during that time. Further, Mr. Kopta had more plant wide seniority than Ms. Pavlack. Because Mr. Kopta is the only employee that Ms. Pavlack contends was treated more favorably than she was and because she has not demonstrated that Mr. Kopta was similarly situated, she has not carried her burden of showing a prima facie case of sex-based discrimination.

Without a showing a prima facie case, Ms. Pavlack cannot proceed on her claim that Dwyer violated Title VII. Summary judgment in favor of Dwyer is appropriate.

### III. CONCLUSION

For the forgoing reasons, the court

    (1) GRANTS the defendant's motion for summary judgment (filed October 31, 1997 (#17));

(2) VACATES the final pretrial conference scheduled for March 10, 1998 and the trial set to commence on March 16, 1998;

(3) DENIES as moot plaintiff's motion to continue the trial (filed February 11, 1998); and

(4) DIRECTS the clerk to enter judgment for the defendant, terminating this cause.

SO ORDERED.

ENTERED: February 12, 1998

s/Robert L. Miller, Jr.
Robert L. Miller, Jr., Judge
United States District Court

cc:   Friedman/Callaway
      Hein/Creamer

15